UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**JOHNNIE M. HATTEN**                                                    **PLAINTIFF**

**V.**                          **CIVIL ACTION NO. 2:03CV548 LTS JMR**

**KAY H. CLAY, ET AL.**                                                **DEFENDANTS**

## MEMORANDUM OPINION

This is an employment discrimination action brought by Plaintiff Johnnie M. Hatten (Hatten) against her former employer, the Forrest County Department of Education, and its Superintendent of Education, Dr. Kay H. Clay. The Court has before it the defendants' motion for summary judgment. For the reasons set out below, the motion will be granted.

For the purpose of ruling on the defendants' motion, I must consider the evidence in the light most favorable to Plaintiff Hatten, resolve all disputed issues of fact in her favor, and I must grant her all reasonable inferences that tend to support her claim against the defendants. Summary judgment is appropriate only when, given this construction of the evidence, Defendants are entitled to prevail as a matter of law. F.R.Civ.P. 56 (c), Duffy v. Leading Edge Prods., 44 F.3d 308 (5th Cir.1995).

### Facts Taken in the Light Most Favorable to Plaintiff Hatten

Plaintiff Hatten was hired for the dual position of bookkeeper/secretary in the Forrest County School District during the 2002 school year. She was assigned to work at the East Travillion Attendance Center. There was no written contract governing the employment relationship between Hatten and the school district. The bookkeeper/secretary position for which Hatten was hired does not require a license. Hatten's immediate supervisor was the principal of the school, Dr. Montell Greene (Greene). Both Hatten and Greene are African-Americans.

During the course of the school year, friction developed between Hatten and Greene.  It was Greene's perception that Hatten was uncooperative and unwilling to follow his instructions.  As the year progressed, the quality of their working relationship deteriorated.  Several memoranda were exchanged between Greene and Hatten concerning Hatten's failure to follow the school's established procedures, the late payment and late submission of bills, and teachers visiting with Hatten in her office.

In February 2003, the conflict between Greene and Hatten came to the attention of Dr. Kay H. Clay (Clay), Superintendent of Education for the Forrest County Department of Education. Clay instructed Martha Lawler (Lawler), Assistant Superintendent of Education and Personnel Director for the school district, to investigate the situation.

On February 13, 2003, the first of three meetings involving Lawler, Greene, and Hatten took place.  This meeting was convened to address complaints made by Hatten against Greene.  The precise nature of these complaints is not clear in the record before me.  Hatten's complaints were made informally, and outside the grievance procedure the school district had adopted.  Following this initial meeting, Lawler reported to Clay that she (Lawler) believed that the conflict between Hatten and Greene had been resolved.

The conflict had not been resolved.  On March 6, 2003, there was an incident in which Hatten, in the presence of Greene and other school employees, made a comparison between the appearance of Greene's wife and a newspaper photograph of a woman who was being arrested on charges related to prostitution.  Greene found this comparison offensive.  Greene sent Hatten a memorandum concerning the matter the following day.  By this time the working relationship between Hatten and Greene was under substantial stress.

When the conflict between Hatten and Greene again came to the attention of Clay, in March, 2003, Clay again asked  Lawler to look into the matter.  On March 27, 2003, Lawler sent Hatten a memorandum in which she characterized Hatten's complaints as, "questioning your supervisor's directions on procedures in the office."  Lawler admonished Hatten to follow the process outlined in the grievance procedure and to work directly with Greene in attempting to resolve their differences.

The March 27, 2003, memorandum also refers to an incident in which Hatten submitted a request that the telephone bills for her school be allocated among the school's phone lines. Because this would have constituted a change in existing procedures, the school district's internal policy required that Hatten have this request approved by Greene before it was submitted. Hatten had disregarded this requirement, and Lawler admonished Hatten to follow this procedure in the future.

The March 27, 2003, memorandum also refers to an incident concerning one of the school's teachers, Mrs. Rebecca Bach. Greene had previously instructed Hatten to eliminate visits in her office by teachers during working hours. Greene instructed Hatten to refer teachers' requests and concerns to him. Despite these instructions, Hatten and Bach continued to confer in Hatten's office during working hours. In the March 27, 2003, memorandum, Lawler admonished Hatten to refer all teachers' requests to Greene.

On March 28, 2003, the day after the memorandum was circulated, a second meeting occurred. During this meeting Lawler, Greene, and Hatten discussed the issues set out in the March 27, 2003, memorandum. Both Greene and Hatten agreed to cooperate with each other, and Lawler again considered the conflict resolved, and she reported that to Clay.

Again, the conflict was not resolved. On April 24, 2003, the third and final meeting took place. At the conclusion of this meeting, Lawler reported to Clay that she (Lawler) did not believe Hatten was willing to resolve the problem by following Greene's instructions. Lawler reported that Hatten's antagonism toward Greene was a divisive influence at the school.

Greene requested permission to terminate Hatten's employment, and Clay granted Greene's request. Hatten was terminated on April 24, 2003. Because Hatten's termination occurred so near the end of the school year, she was not replaced until the following school year, and the record does not disclose who was hired in her stead. Hatten soon found other employment at a higher rate of pay.

The affidavits submitted by Clay and Lawler, along with the documentation Greene prepared with respect to the conflicts he had with Hatten, make it clear to me that the decision to terminate Hatten was neither reached in haste nor made until substantial efforts had been expended to resolve the conflict between Hatten and Greene. In the end, mediation efforts were simply unsuccessful, and the

record before me clearly establishes that the failure of these mediation efforts was attributable, at least in substantial part, to Hatten's refusal to recognize Greene's authority as supervisor and to Hatten's unwillingness to honor her duty to follow Greene's instructions and adhere to the school's policies and procedures.

Hatten, who is appearing pro se, has not submitted any evidentiary materials in opposition to the defendants' motion for summary judgment. I do have the benefit of Hatten's deposition testimony, and it is readily apparent that Hatten does not deny the substance of the account of this conflict given by Clay and Lawler. Hatten does not deny that she failed to follow the school's procedures on several occasions; she does not deny that she disobeyed Greene's admonition to eliminate office visits with teachers in the school; she does not deny that the incident with the newspaper photograph actually occurred; and she does not deny that Lawler's efforts to resolve the conflict were done in good faith. Hatten does not come forward with any evidence that the conflict which led to her dismissal, her conflict with Greene, was a pretext for racial discrimination.

In essence, it is Hatten's argument that even though she did in fact fail to follow Greene's instructions, even though she failed to follow the school's procedures, and even though she continued to allow visits by the school's teachers in her office after Greene specifically instructed her not to do so, her conduct was not worse than that of other, white employees who were not terminated for this same conduct. To support her argument, Hatten has submitted no evidence other than her assertion that this is so.

## Legal Standards

Employment discrimination cases under title VII and 42 U.S.C. §1981 are decided under the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to prevail on a claim of racial discrimination in the termination of employment, a plaintiff must first establish a *prima facie* case by proving that she is a member of a protected class, that she was terminated, and that she was replaced with an individual who is not a member of her protected class.

Hatten has established that she is a member of a protected class, i.e. she is African-American, and that she was terminated from her employment. Hatten has not established that she was replaced by an individual who is not a member of this protected class, but I will assume, for the purpose of deciding this motion, that she

could meet her burden of proof on that essential element of her *prima facie* case. Doing so would shift to the defendants the burden of articulating a legitimate, non-discriminatory reason for Hatten's dismissal. This the defendants have done.

The burden would then shift back to Hatten to show that the reason the defendants articulated for her dismissal was really a pre-text for racial discrimination. Hatten has the burden of producing substantial evidence of pretext, and her subjective belief of discrimination is not sufficient to meet this evidentiary obligation. Bauer v. Albemarle Corp., 169 F.3d 962 (5th Cir. 1999). This Hatten has not done, and, in light of the undisputed facts disclosed in the record before me, Hatten cannot meet her burden of proof on this issue.

If Hatten were able to establish her claim that a similarly situated non-minority employee engaged, with impunity, in substantially similar misconduct, i.e. in conduct substantially similar to that which was articulated by the defendants as the reason for Hatten's termination, she might make a case of disparate treatment sufficient to create an issue of fact. On the record before me, however, there is no substantial evidence to support this theory. Hatten's job was unique at the Earl Travillion Attendance Center. She held the dual position of bookkeeper/secretary. Several of the incidents that led to Greene's dissatisfaction with Hatten and to her ultimate termination were directly related to her failure to follow the school's procedures in her role as bookkeeper. The only other employee Hatten has identified in support of her theory of disparate treatment has no bookkeeping responsibilities and committed no equivalent offenses.

As an unlicensed school employee, Hatten is not within the scope of the hearing requirements embodied in §37-9-59 Miss. Code Ann. (1972).

## Conclusion

The record before me establishes that the defendants had legitimate, non-discriminatory reasons for terminating Hatten's employment. This record discloses an active, ongoing conflict between Hatten and her supervisor, Greene. There is no evidence that his conflict had anything to do with Hatten's being an African-American. This record shows that Hatten failed to submit to Greene's authority and that she failed to follow the school's written policies and procedures on several occasions. The record also discloses substantial efforts made by the administrators in the Forrest County Department of Education to resolve the conflict by mediation, and it discloses that the failure of those efforts was

attributable, at least in substantial part, to Hatten's unwillingness to cooperate with Greene and follow his instructions.  I find no evidence that Hatten's termination was racially motivated, and I find no evidence that the school's stated reasons for Hatten's termination are a pretext.  Hatten's pleadings and her deposition testimony are conclusory allegations of racial discrimination that are insufficient to create a genuine issue of material fact with respect to the ultimate issue, i.e. whether the reasons the defendants have articulated for Hatten's termination are in fact a pretext for racial discrimination.  Since this is an issue as to which Hatten bears the ultimate burden of proof, and since Hatten has failed to submit sufficient evidence to create a genuine issue of material fact on this point, defendants are entitled to summary judgment.

There is no genuine issue of material fact left to be resolved in this case.  The defendants' motion for summary judgment will be granted.  An appropriate order will be entered to this effect, and a judgment of dismissal will follow.

Decided this 7th day of December, 2005.

s/ *L. T. Senter, Jr.*

L. T. Senter, Jr.
Senior Judge